**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARVIN JONES, #339-164                        *

          Plaintiff                        *

    v.                                                   *          Civil Action No. GLR-12-1918

                                     *

M. RANDLE, et al.                                    *

          Defendants                   *

                                 ***

## MEMORANDUM OPINION

Pending is Marvin Jones' ("Jones") civil rights Complaint under 42 U.S.C. § 1983. Defendants, M. Randall,[1] CO II  Scarpelli, CO II Shroyer, and CO II Wilburn, by their counsel, move pursuant to Fed. R. Civ. P. 12(b) to dismiss the Complaint or, in the alternative, move pursuant to Fed. R. Civ. P. 56 for summary judgment.  Plaintiff has filed a "Motion to Dismiss" (ECF No. 20). [2]  The matter has been briefed, and a hearing is deemed unnecessary.  See Local Rule 105.6 (D. Md. 2011).  For reasons to follow, the Court will grant summary judgment in favor of Defendants.

---

[1] The case caption makes reference to Defendant M. Randle.  Defense counsel alternatively refers to the Defendant as M. Randall, however.  See ECF No. 17.  The Court adopts the latter variation.

[2] Plaintiff was granted additional time to file an opposition with materials in support pursuant to Roseboro v. Garrison, 528 F.2d. 309 (4th Cir. 1975).  Plaintiff's "Motion to Dismiss" was filed with a copy of Defendants' dispositive Motion (ECF No.17) on which there are handwritten notations presumably written by Plaintiff, generally stating that that many of Defendants' assertions are "fibs" and Scarpelli's injuries were less substantial than claimed. ECF No. 20 and Att.

**BACKGROUND**

**A. Plaintiff's Claims**

Jones, who is presently incarcerated at Jessup Correctional Institution, claims he was subjected to excessive force by corrections officers at Western Correctional Institution ("WCI") on August 11, 2011, after he acknowledged assaulting an officer earlier on the same day.[3]  ECF No. 1, pp. 8-9; see also ECF No. 17, Ex. A, pp. 16-18, 22, 58-60.

Jones presents the following sequence of events.  On August 11, 2011, Jones was waiting to receive his medication in the medical unit when Officer Scarpelli  ("Scarpelli") ordered him to remove his hands from inside his pants.  Jones claims that after he complied, his pants fell to his knees because they were too big.  Scarpelli then asked Jones whether he was trying to be a "wise ass."  Plaintiff asked Scarpelli, "Why are you always harassing me?"  Scarpelli then "reached out with both hands" for Jones' neck.  Fearing for his safety, Jones "push-punched" Scarpelli, who "hit the floor."  Complaint, ECF No. 1, pp. 8-9.[4]

Additional officers responded to the scene.  Although some of the responding officers were unsure whether Jones or another inmate, James Johnson, had struck Scarpelli, Jones voiced responsibility for the assault.  ECF No.1, p. 8; see also ECF No. 17, Ex. A, p. 15).  Jones was placed on the floor and handcuffed.  He was taken to a holding cell where he was, while stripped, kicked about the face and body.  His legs and fingers were twisted and pulled back.  ECF No. 1, p. 9.  Jones asserts he then was left in the cold cell for 45 minutes.

---

[3]  Plaintiff pleaded guilty in the District Court for Allegany County to second-degree assault on a Division of Correction officer on the basis of this incident.  ECF No.  17, Ex. A, pp. 58-60.

[4] Defendants' records indicate the camera for this area was not "set to record" and no video evidence was available. ECF No. 17, Ex. A, p. 9.  The absence of video substantiation, although troubling, is not dispositive in this matter.

Jones' clothes were returned and he was taken by Officer Randall ("Randall") and Sergeant Daddysman[5] to a cell in the special observation housing area, Segregation Unit 4, where he was stripped by Officers Coulter, Shroyer, Wilson and Wilburn. He alleges Randall made threatening remarks such as, "You like putting your hands on our officer?" Id. Jones claims that Randall asked the sergeant, "Ain't you gonna beat him up?" to which Sergeant Daddysman replied, "No." Id. Jones was ordered to get on his knees and face the wall, whereupon he was punched and kicked on his head and back. His clothes were thrown in the toilet and he was put in a cold cell for 72 hours and refused food by Officer Wilburn. Jones avers he was later placed in a cell with a racist prison gang member so that "the racial torture can continue" Id. Five months of "torcher [sic] and harassment" followed before he was transferred to the Jessup Correctional Institution. Id.[6]

**B. Defendants' Response**

In support of their dispositive pleading, Defendants have submitted affidavits and verified exhibits. They are summarized below in pertinent part:

**Officer Scarpelli's Declaration** On August 11, 2011, Scarpelli was assigned to the Medical Unit. Scarpelli observed Jones being loud and causing a disturbance, so he instructed him to step back into the line and stop yelling to other inmates. Jones got back into the line and put his hands down the front of his pants. Scarpelli told Plaintiff to remove his hands from his pants in order to be sure he had no weapon. Plaintiff said, "Scarpelli, why you always getting on me?"

Scarpelli instructed Jones to go into the secure waiting room and wait there, but Jones continued to be loud and cause a disturbance. Scarpelli stepped around the panel separating him from the inmates and took Plaintiff by the arm to escort him to the secure waiting area. At that time, Plaintiff punched Scarpelli in the face and he fell to the floor. Scarpelli heard the "officer down" code called, but due to his groggy condition was unable to observe any happenings.

---

[5] Sergeant Daddysman is not a defendant.
[6] Jones does not provide additional details to explain this claim or any injuries sustained as a result.

Scarpelli was transported to the Western Maryland Regional Medical Center for x-rays and evaluation. He suffered a black eye, bloody nose and lacerations to the inside of his mouth. After he was treated at the hospital, he returned to WCI to write the incident report and then went home.

Scarpelli does not recall any prior contact or interaction with Jones. Approximately three months after the incident, he was assigned to work a shift in Housing Unit 4, where Jones was housed, and he saw Jones but had no interaction with him. ECF No. 17, Ex. B, Decl. of William Scarpelli.

**Officer Robertson** Officer K. Robertson ("Robertson") observed Jones assault Scarpelli. ECF No. 17, Ex. A, pp. 12-13, Notice of Inmate Rule Violation. Robertson saw Scarpelli tell Jones several times to take his hands out of his pants. Jones became argumentative and asked why Scarpelli was "harassing" him. Scarpelli replied that he did not know whether Jones had a weapon in his pants. Jones continued being argumentative and Scarpelli told him to wait in the "corner pocket," a secure waiting area. Jones refused. Scarpelli walked across the room and reached to grab Jones' left arm to take him to the "corner pocket." Robertson witnessed Jones hit Scarpelli in the face with a closed right fist. Scarpelli fell to the floor. Robertson called a "10-13" (officer down) on the radio and numerous officers responded. As Jones was placed against the wall, he said, "I hit him."

**Officer Randall** Randall attests that on August 11, 2011, he was assigned to Housing Unit 4 escort duty. Randall explains that when an inmate is involved in an assault on staff, the inmate is brought to Unit 4 and placed in a staff alert cell. Randall recalls Jones was brought to Housing Unit 4 on August 11, 2011, but did not recall being involved in placing Jones into a staff alert cell. There is no record of Randall escorting Jones to Housing Unit 4 on that day. Randall attests "[a]ll of Plaintiff's allegations concerning me are false." I was not in a cell with him on August 11, 2011. I did not speak to him on August 11, 2011." ECF No. 19, Att. A, Decl. of Marlin Randall.

Randall states that sometime after August 11, 2011, Jones was housed in Cell A-30 on Housing Unit 4, A Tier where he was tier officer. Randall states he had no problems with Jones except for minor violations such as covering cell windows or not standing for an inmate count. He never wrote an infraction on Jones. See id.

**Officer Wilburn** Officer Brett Wilburn ("Wilburn") attests Jones' allegations against him are "completely false." ECF No. 10, Att. A, Decl. of Brett Wilburn. Wilburn states that on August 11, 2011, he was assigned to escort relief duty. He was not assigned to Housing Unit 4 on that day. As a segregation unit, Housing Unit 4 has its own escort officers.

**Officer Shroyer** Officer Robert Shroyer ("Shroyer") attests Jones' allegations against him are "entirely false. I was not at WCI on August 11, 2011, which was my day off." ECF No. 17, Ex. E.

Jones was escorted to Special Observation Housing, Unit 4, where he submitted a written statement blaming an unknown Muslim inmate for the assault on Scarpelli. ECF No. 17, Ex. A, p 22. Afterwards, Jones was examined by Dennis Martin, R.N. ("Martin"). Martin's medical notes indicate Jones had left eye discomfort, but reported no other injuries. Martin observed no swelling or open areas, and concluded no further treatment was needed. ECF No. 17, Ex. A, pp. 24, 47. Photographs were taken of Jones after the incident. See id. pp. 26-27, 33.[7]

Five days later, Jones complained of pain in his left knee and fingers on both hands, one on the left hand and three on the right. See id. pp. 49-54. X-rays were taken and revealed a "small avulsion fracture" to the little finger of the right hand. Id. p. 54. [8]

## STANDARD OF REVIEW

Because matters outside the pleadings shall be considered, Defendants' Motion shall be treated as a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant

---

[7] Images provided to the Court do not corroborate Jones' claims of suffering kicks and blows to the head and body.

[8] There is no indication as to when Jones sustained the avulsion fracture or whether it was the right fist with which Plaintiff punched Officer Scarpelli. It is possible, as Defendants' counsel posits, that the finger was fractured when Jones punched Scarpelli.

submission of the matter to a jury for resolution at trial.  See id. at 249.

In this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  See Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  See Anderson, 477 U.S. at 249–50, 106 S. Ct. 2505.  A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574, 586 (1986).

## DISCUSSION

### A.  Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  See Whitley v. Albers, 475 U.S. 312, 321 (1986).  Absence of significant injury alone is not dispositive of a claim of excessive force.  See Wilkens v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1177 (2010).  The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape

serious harm.  See Wilkens, 130 S. Ct. at 1177.

"When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective [standard], a court may allow an inmate's claim to go to the jury only if it concludes that the evidence viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'"  Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998), quoting Whitley v. Albers, 475 U.S. 312, 322 (1986).  Although a court may not ordinarily determine credibility between the parties, Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991), "[w]hen opposing parties tell two different stories, one of which blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion of summary judgment."  Smith v. Ozmint, 578 F.3d 246, 254 (2009), quoting Scott v. Harris, 550 U.S. 372, 380 (2007).

### B.    Analysis

Jones has been called upon to rebut Defendants' Declarations and materials with his own verified documents to establish a genuine dispute of material fact.  His handwritten notations in on a copy of Defendants' response fail to do so.  ECF No. 20, Att.  Further, even when Jones' allegations are viewed in the light most favorable to him, he fails to demonstrate a genuine dispute as to any material fact.  The undisputed facts are that on August 11, 2011, Jones punched Scarpelli in the medical unit at WCI.  Officers responded to insure the safety of officers and inmates.  In dispute is what occurred afterwards in Special Housing Unit 4.  Jones' claims that he was kicked and beaten while kneeling, and in handcuffs, are not borne out by his medical examination immediately after the alleged incident, nor reflected in the images taken of him shortly afterward.

Further, Defendants, by their affidavits, state they were not in the cell with Jones during

the alleged incident. Specifically, Scarpelli was receiving medical treatment after he was assaulted by Jones, Randall denies being in the cell, Shroyer was not at work that day, and Wilburn denies being in Housing Unit 4 that day.

Additionally, Jones does not allege in the Complaint that Scarpelli ever used excessive force against him. Jones, however, indicates in his Motion to Dismiss (ECF No. 20, Att. p. 2) that while in the medical unit Scarpelli "grabed [sic] me and tryed [sic] to treat me like I was his child." Jones' allegation, even if true, does not equate to a claim of excessive force. Jones had been repeatedly warned to discontinue his loud and disruptive behavior while in the medications line, but failed to comply. As Scarpelli approached and reached out his arms, Jones admittedly "push-punched" the officer, an act to which Jones later pleaded guilty in the District Court of Allegany County. Because no genuine issue of material fact is presented, Scarpelli is entitled to summary judgment as a matter of law.

Next, Randall denies being in a cell with Jones on August 11, 2011. Assuming the truth of Jones' allegations, Randall's threats and verbal harassment, albeit unprofessional and reprehensible, do not state a claim of constitutional magnitude. Verbal abuse of inmates by guards, including aggravating language, without more, does not amount to a constitutional claim actionable under 42 U.S.C. § 1983. See e.g. Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Blades v. Schuetzle, 302 F.3d 801, 805 (8th Cir. 2002); Cole v. Cole, 633 F.2d 1083, 1091 (4th Cir. 1980); Barney v. Pulsipher, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In sum, Jones' assertions of verbal threats by Randall do not amount to a cognizable constitutional claim. Accordingly, summary judgment shall be entered in favor of Randall.

In regard to Jones' claims that Shroyer participated in an assault on him in Housing Unit 4, Shroyer attests that he was not working on the day of the incident; it was his day off. Jones offers no affidavit or other verified exhibits in rebuttal. As such, no genuine issue of material fact is presented; thus summary judgment will be entered in favor of Shroyer.

Lastly, Wilburn states in his declaration that he was assigned to general escort relief duty on the date of the incident, and never entered the Unit 4 housing on that day because the Unit has its own officers. Wilburn further attests that he has never denied Jones a meal.

## CONCLUSION

After considering the facts and all reasonable inferences in the light most favorable to Jones, the Court finds no genuine issue of material fact is presented. Accordingly, the Court shall grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion to Dismiss. Judgment will be entered in favor of Defendants and against Plaintiff by separate Order to follow.

May 23, 2013

*/s/*
_____
George L. Russell, III
United States District Judge